The Illinois Appellate 450 Division is now in session. Honorable Justice Sharon O. Johnson is residing. You may be seated. Good morning. I'm Justice Sharon O. Johnson. I'm joined by my colleagues, Justice David Navarro and Justice Ray Mitchell. The appellant will be given 20 minutes in which to present argument with the opportunity to reserve time for rebuttal, followed by the respondent who will have 20 minutes in order to present its argument as well. Counsel, you may approach. How much time would you like to reserve, Counsel? Five minutes, Your Honor. Please state your appearance for the record. William Ryan, on behalf of the Paper Source LLC, the plaintiff appellant. You may proceed. Good morning. May it please the Court, Counsel. We're here on an appeal from the Circuit Court's dismissal of the Fourth Amended Complaint pursuant to Sections 2615 and 2619 of the Illinois Code of Civil Procedure. The parties agree that the standard review here is de novo because it was a dismissal on the pleadings. All the inferences should be construed in the light most favorable to Paper Source as the non-moving party. I'd like to start by emphasizing, as planned in the complaint, the particular contractual arrangements that the co-tenant agreement is part of, the contract that issued. As planned in the complaint, the parties decided that it was in their economic interest to enter into a lease as co-tenants. Under this lease— Your client wasn't a party to that. Yes, Your Honor, it was the predecessor entity which we referred to in the pleadings as former Paper Source. So your client is actually a stranger to the co-tenant agreement. Well, Your Honor, we—Justice Mitchell has put in our briefs—our position, of course, is that they are the party to the co-tenant agreement by assignment. But the bankruptcy court never signed that agreement. It assigned the lease, right? There's a long schedule of what the—attached to the asset purchase agreement, and the co-tenant agreement isn't there. Yes, and as we argue in our briefs, Your Honor, the co-tenant agreement was assigned to the plaintiff, Paper Source, through the federal bankruptcy because it is a— Well, how could that be when you say in your reply brief, quote, So by your own concession, the bankruptcy court never addressed the co-tenant agreement. Justice Mitchell, the bankruptcy court did not expressly address the assignment of the assigned by operation of law. Under U.S. Code Section 365 of the Bankruptcy Code, when a debtor has an opportunity to assume or reject a lease or a contract, and under that law, under the principle of cum honore, right, which is with burdens, when a debtor accepts a lease, an expired lease or a contract, it takes with it all of the conditions and burdens and related contracts that are connected to that lease. And—but in every bankruptcy court case that you cite, the question of whether this related contract was so intertwined, such that it should also be assigned, was decided expressly by the bankruptcy court. You don't have a single case, do you, where a state court later expands or reinterprets a bankruptcy court assignment? Justice Mitchell, we don't have a state court, but we do have a federal court, the Sixth Circuit, which is—we cited in our reply brief at page 3, the EPPLET LLC case. And in EPPLET, like in the current case, the issue of which contracts were included in the package of assumed contracts and leases was raised for the first time in the bankruptcy. And in that case, the court ruled post-bankruptcy that a post-bankruptcy breach of contract involving two related contracts was enforceable, post-bankruptcy, because they formed a single integrated leasing transaction with a lease that was assumed. So in that case, as in the present case, it was raised only when a claim for breach of contract was being brought forth and an issue was raised as to whether the party had standing and assignment of those contracts. And the court, the Sixth Circuit, went back and said, essentially, under the operation of law, under Section 365 of the Bankruptcy Code, all related contracts travel together as a package. And therefore, the party was able to rely on a guarantee that was not specifically assumed in the bankruptcy. And the cases, the other cases that we cite do address when that issue was first brought to the court before the confirmation of the plan. But as set forth in the EPPLET case, that is not a determining factor. There is nothing about Section 365 or the case law that we cite, including the Illinois contract law, that requires a particular determination to be made before the confirmation order. Now, the difficulty is, here is, we would have a state court making a determination as to the extent of a bankruptcy court order in terms of what it means. That seems to me to trench upon this idea that bankruptcy is exclusively federal, right? I mean, essentially, to accept your argument, we would allow a state court to expand a bankruptcy court judgment. Justice Mitchell, I do not believe that we are asking that for the same reasons that we argued that collateral estoppel does apply. Because as you indicated from reading from our brief, the bankruptcy court itself did not reach that issue. So the co-tenant agreement is considered to be part of the lease by operation of law. And unless a bankruptcy court had ruled or some federal court had ruled to the contrary, there is no contradiction. Because these contracts, when they are determined to be inseparable and forming a single economic transaction, they travel together as a package. And nobody raised it during the bankruptcy. However, that only means that there was no determination made by the bankruptcy court. And this court, applying both Illinois contract law with reference to Section 365, can recognize what the federal courts have recognized and what Illinois courts in contract law recognize all the time. Counsel, once you realized that this was an issue, did you consider motioning it back up before the bankruptcy court to have them determine this issue? We did not. The issue was first brought to attention when the complaint had been filed. And it had been several years or more than a year since the bankruptcy court judgment had been entered. So the answer to your question, Justice Johnson, is no, we did not do that. However, reading the law, we don't believe that it was required to do that. Because it is not required that there be a specific expressed acknowledgment that the co-tenant agreement was part of the lease. Because that occurs by operation of law. And at any point in time, when a party would raise the issue, then obviously whatever court is adjudicating the claim will have to look at it. But just because the bankruptcy court was silent doesn't mean it was excluded. Because the law, as explained in the cases that we cite, the federal cases, it is by the operation of law. And whenever a party is raising a claim or seeking to enforce a right under these contracts, then that's when you have to look at the separate question, or I should say the related question under state law, which is are these inseparable contracts that should be treated as a single transaction. And as we argue in the briefs, there's ample Illinois law. And of course, as the federal bankruptcy cases, once they recognize the operation of Section 365 and the principle that all, you know, related contracts have to travel together, the ultimate determination as to whether these are inseparable contracts are determined by state law. And here in Illinois law, as in many jurisdictions, there is a rule that your courts will look to the intent of the parties. And if the intent of the parties is shown that multiple contractual instruments are intended to be part of a single, you know, economic transaction and that the parties intended for the duties and obligations to be connected, then that should be treated as one contract. And we think that the facts as put in the complaint, you know, make that clear. And sort of just to talk about what is unique about this relationship, because the parties were co-tenants under the lease and they were fully liable for all obligations, including rent, as the tenants, there was no allocation or distinguishing between them in the lease. However, as put in the complaint, it was the intent of the parties to use the lease premises to conduct essentially separate businesses within that space. And therefore, the lease, the transaction that was being consolidated by the lease, could only function as intended by the parties with the addition of this co-tenant agreement. And it was the co-tenant agreement that allocates the specific responsibilities between them. And as put in the amended complaint or in the complaint, the parties intended only to be bound to the co-tenant agreement and the lease because they were entering into both transactions at the same time. And if you look at the economic plan, the economic intent, what the parties were attempting to achieve by this lease, it could only have been achieved with the co-tenant agreement and the lease acting together. Can I ask just, it's more of a curiosity than anything, but what's the current status of the lease? Does your client occupy the property today or not? I know that no improvements have been made and that the intended businesses have not gone into operation. Beyond that, I don't have current information. Do you know, did the landlord accelerate the payments due under the lease when there was the default? Justice Mitchell, you're raising, of course, facts outside the complaint, but I could tell you that I'm not aware that the landlord has accelerated the lease. Wouldn't that then, I mean, it's going to the point of what's reasonable damages and whether or not this is something, the acceleration clause in the agreement, whether it would operate as a penalty. Because it seems to create an extraordinary windfall for your client. They would get free rent through 2032 in a situation where the landlord hasn't accelerated any payments due. I mean, because you referenced the economics of the transaction. Doesn't that just seem rather unreasonable? I think, again, it goes back to the particular relationship that they were entering into. Now, obviously, the parties believed that there was benefits, substantial benefits associated with this unusual arrangement. But the arrangement also included within it potentially substantial risk. And one of the risks would have been that the Chute of Eats, for example, could have breached the contract, could have caused a default, and the landlord could accelerate and collect the entire amount against paper source. So the liquidated damages provision or the rent acceleration provision was reasonably related to paper source's ability to protect itself economically from potentially catastrophic loss that was caused by Sugar Beets. And each, you know, these are sophisticated parties. They, you know, well represented. They are involved in real estate. They entered into this relationship because they thought it was going to be profitable for them. But there was known and significant risks associated with this arrangement from both parties. And one of the things that's significant about the liquidated damages provision, which I think distinguishes it in another way from penalties, is that this was mutual. This was not a situation where, you know, paper source has put in the contract some, you know, hammer that it could use to hit the other side. This was bilateral and mutual. If Sugar, I mean, if paper source had been the breaching party, it could have gone the other way. The acceleration could have been against paper source. But this was a reasonable way for the parties to protect themselves against, you know, an identifiable risk, right? And if, in fact, the landlord had accelerated payments. Well, perhaps, Justice Mitchell, you're identifying a reason why it would not be appropriate to resolve this on the pleading stage, right? Because it's not in the facts that are pled in the complaint. And, you know, it would perhaps be something for discovery. Maybe there's new developments that have occurred since the complaint. And those are all to be taken into consideration. We don't dispute that when deciding whether a liquidated damages provision could potentially be viewed as a penalty. You would look at facts like that. You would look at facts related to the intent of the parties, what they were trying to accomplish, what were the risks, how does this liquidated damages provision address, you know, potential risks and their ability to allocate amongst themselves. And given the circumstances of this arrangement and the clarity of the language in the agreement, you know, they knew what they were doing and they thought it was worth their risk and their benefit to go forward with this arrangement. So I think to go back to where I started, I think the linchpin, you know, of this case is the inseparability of the co-attendant agreement with the lease. As you know from the complaint, we have a count two in the alternative, which is a claim for implied in fact contract, which assumes that if there was no assignment, once the bankruptcy ended, both parties, the plaintiff, Paper Source, and Sugar Beets, went forward and continued to perform and operate under the contract as if it was in place. And we believe, for the reasons stated, that there was a valid assignment under the law. Every step of the way, the parties acted and performed as if the contract wasn't a fact. And we believe that those facts, if necessary. All they did was pay rent for a couple months, right? Justice Mitchell, they paid rent, but not just in a very generic sense. They didn't. There's no e-mail correspondence. Oh, we're going to abide by the co-attendant agreement. Don't worry about it. There's not that e-mail, right? There's not that e-mail, Justice Mitchell. But I think that to say that they paid rent is not to fully appreciate the significance of the facts that we plead, because they paid a very specific percentage of the rent. They paid, you know, 59.1%. They didn't just, you know, where did that number come from? That number came from the co-tenant agreement. And then also it adds to our complaint as correspondents that once payments started to be missed, you know, when the issue of the co-tenant agreement was raised, there was never any objection. There was never any statement that the co-tenant agreement was not in effect. And we have performance over a period of several months, from June to November of 2021. And that percentage was not also listed in the lease, correct? That is absolutely correct, Justice Johnson. It's only found in the co-tenant agreement. It was, you know, an issue raised by Justice Mitchell's earlier question, or perhaps, I'm sorry, it was your question, Justice Johnson. It's like, you know, why didn't you go back to the bankruptcy court? The facts really show that they thought that the contract was assigned, right? And the contract was being performed as if it was assigned. But if there was no assignment, under the cases we cite in our brief, where a party is, there's a contract between two parties, and one party drops out for some reason, and another party steps in the shoes of that party and continues to perform in exactly the same way, then that party, through its conduct, has adopted, you know, as an implied contract, the terms of that agreement. And that's a fact-y question that can't be resolved on motion to dismiss. That would be our argument, Justice Mitchell, yes. Thank you very much, counsel. You've reserved five minutes for rebuttal. Good morning, Justices. My name is Adam Cedia, and I will be arguing on behalf of the Appley Sugar Beets. I want to begin by addressing the Eplick case that counsel raised in argument and in the briefs. It's of limited use to their position. First of all, the issue in that case was not whether the underlying contracts had been assigned as part of the bankruptcy proceedings. The district court there held that they had terminated because they were rejected under Section 365 of the Bankruptcy Code. Can you speak a little louder for me? I apologize. And the district court held that the rejection terminated the contract, which contradicted the federal law on the subject. The issue of whether the contracts had been assigned validly or not didn't come up there. And I would say that that's a case here, and I would agree that the paper source is challenging the bankruptcy court's judgment through a collateral attack. And if you look at the analysis Eplick conducted for severability, it didn't just look at the agreements. It looked at conduct of the parties in the underlying bankruptcy proceedings. It noted that the debtor-slash-defendant had argued that before the bankruptcy court that the agreements were non-severable, and then in the subsequent lawsuit it argued that they were severable. And the district circuit ended up holding, well, your conduct in arguing that they were non-severable, you know, you can't switch that position now and say they're severable when in the bankruptcy proceeding you said they were non-severable. That's a stopple. And the same principle would apply here. The privy, the assignor, the paper source corp, was a party to the bankruptcy proceeding. It had an opportunity to object when that lease was included in the asset purchase agreement, and the co-tenant agreement was omitted. It did nothing. But counsel, if they believed that the co-tenant agreement had been incorporated into the lease agreement, why would they raise the issue if they thought it was clear? Well, the behavior doesn't indicate that they did believe that. In fact, here we are arguing whether it was or not. Why didn't your client raise it then? We weren't a party to the bankruptcy proceeding. And then going to the question of severability itself, separate from the bankruptcy corpse order, this is a question of state law, as the Upland case states. And in Illinois, the touchstone of severability is interdependence. Now, the dictionary definition of interdependence is mutual dependence, pretty common sense. So Agreement 1 can depend on Agreement 2, but unless Agreement 2 also depends on Agreement 1, there's no interdependence, and therefore they're severable. We do not have interdependence here. They're different parties, right? The landlord isn't a party to the co-tenant agreement. Correct. Now, there is some case law that says identity of parties is not required, but if you read the Indigo-Old Corp. federal case, in the very next sentence, the parties must be the same. So while they don't have to be identical, there has to be enough of the agreements between the parties to establish a single transaction. We don't have that here. Not once in its several long provisions, it's 50 pages or something like that, not once does the lease mention the co-tenant agreement. And if, as counsel is arguing, these were executed the same day and intended to be part of the same transaction, one would expect that the lease would at least mention the co-tenant agreement, even by way of exhibit, and we don't have that anywhere in there. What we have here is a situation where the landlord enters into this lease with two tenants and says, I just want my rent, whatever arrangements between the two of you, do what you want, just pay me my rent. And so the two tenants went and they entered into this separate agreement, which I would concede depends on the lease. Without that lease, there's no need to have this co-tenant agreement. But the lease doesn't depend in reverse. And if we look at all the bankruptcy cases cited, FPSDA, CARFACAS, ATHLET, again, the Trinity Coal is kind of unique. But all those agreements we have, in all those cases, rather, we have agreements that reference each other in their text, and in most cases even say that these agreements are part of a single transaction. We would not enter this agreement without this other agreement. And we have an integrated whole between them. And the determination was made by the bankruptcy court in those cases? Correct. Definitely. Are you aware of any state court case where contract A is assigned by the bankruptcy court, and a state court later says that contract B, by implication, must have also been assigned? I haven't run across one in my research. And I frankly find it would be surprising to see a state court making rulings on matters that have been before a federal bankruptcy court on a matter within federal jurisdiction. The Trinity Coal case, too, presents another interesting scenario. But, again, here we have a master agreement that incorporates a series of related agreements, again, specifically within its text. So we might have agreements here and there, but there is a single agreement uniting them. Again, the theme of these cases is that interdependent agreements all reference each other. We have a dependent agreement. We do not have an interdependent agreement in this case. Counsel, can you address why your client continued to pay the specific percentage that was indicated solely in the cotinent agreement? Well, that is not clear. The motivation for doing that isn't clear in the pleadings or in the exhibits. But inferring, it was still occupying the space and deriving a benefit from that. And in that situation, common law would impose a month-to-month tenancy, which is the relationship they appear to have been behaving under after this deal went south. And they paid it to the appellant, not directly to the landlord? That I would have to check the record on. I believe it was to the appellant, but I'm not 100 percent sure on that. And, in fact, when we get to these e-mails talking about this, again, these were attached to the Fourth Amendment complaint. So when we're talking about making a judgment on the allegations of the complaint, we're not talking about, here's a complaint that's been filed. There are reams and reams of exhibits to this. And our position is that the allegations are not supported and, in fact, contradicted by the exhibits, which control in that scenario. We have, in December 21st, Paper Sources Rep sends an e-mail talking about sharing rent to the landlord. And here we have this inference, hey, we're occupying the space. We need to share our duties here. On January 12th, there's a counteroffer from Sugar Beets talking about release from the lease. No mention of the co-tenant agreement. And, in fact, throughout this series of e-mails from December and January 21 to 22, there is no mention at all of the co-tenant agreement, even by implication. There's nothing that says our agreement, our contract, the document. It's just talking about how these parties are occupying the space and paying for it going forward. And then on January 25th, 22, we have the e-mail where Sugar Beets' rep says that he is surprised to receive the default letter. Well, that indicates, if anything, there's been no meeting in the minds about the arrangement because the default letter references the underlying co-tenant agreement, and why would Sugar Beets be surprised if its intent was to be abiding by that agreement all along. And then, again, this also implicates the statute of frauds. This has been briefed. We have the paper sources making a rather extraordinary argument that there's been an oral adoption of a prior written agreement. And there's very old Illinois case law saying that you can't do that without violating the statute of frauds. And the recent Federal case cited, Auto Driveway, says the same thing. It upheld a month-to-month non-compete, but specifically because the month-to-month did not violate the statute of frauds. And that's the provision that it can't be completed within a year. Correct. Specifically, a lease, if it can't be completed within a year, it has to be in writing. I want to finally address the points made about the unenforceable penalty. This argument only applies if this court accepts all of the appellant's other arguments. The final problem it has is that Section 10 of the co-tenant agreement, we argue, is an unenforceable penalty. The circuit court didn't address this, but it can form an additional base for affirming the judgment if this court wants to get to it. If you read the quote-unquote liquidated damages provision, its exact words are the breaching party owes sums due under the lease and under this agreement. In other words, accelerated rent due to the landlord, regardless of whether the landlord actually accelerates or not, and the proportionate share due under the co-tenant agreement. And then it goes on. It says, plus any additional remedies, any remedies available under the lease, the co-tenant agreement at equity. Well, that's actual damages. So what we have is an actual damages relief stacked with payment under the co-tenant agreement, stacked with accelerated payment due to the landlord under the lease. So this is a triple-layer stacking of remedies that are not mutually exclusive, and that violates the whole idea of what a liquidated damages provision is. Liquidated damages says here's an ascertainable amount we're going to agree to in the event of a breach. Whereas here we say, oh, we'll still get actual damages plus these additional amounts. That's not a liquidated damages provision. That's a penalty provision. I know I have some time left, but I've concluded all the points I would like to make. If there are no further questions, I would ask this Court respectfully to affirm the judgment of the Circuit Court in all respects. Thank you all. Thank you. A few brief points, Justices. With respect to the interdependence or the relationship of the contracts, I think counsel stated that the touchstone was interdependent, but I believe Illinois law, look at the cases, the touchstone is intent. What is the party's intent? And the cases that we cite in our brief involve holdings that contracts are related and should be construed together. We're deciding that under strictly Illinois law, outside of the context of a bankruptcy court, where the bankruptcy court has this wand where they can invalidate an anti-assignment provision. We don't have that in Illinois law, right? Even if you were to look strictly under Illinois law, you have some hurdles, right? There's an anti-assignment provision, which makes sense. Do I want to be a co-tenant with a complete stranger? No, I don't. I want to be able to approve if I'm going to be a co-tenant. And in the lease itself, you have an integration clause, right, or a merger clause. It reflects the complete agreement of the parties. That creates a bit of a problem for this idea that these were a single, unitary agreement. Justice Mitchell, I think with respect to the analysis, the state law piece is separate. And once you get to the question of are these contracts interrelated or integrated, that is solely a question for state law. I mean, the federal cases acknowledge that you should – The question is – I mean, this is still a question. I mean, it's a question. Is that something that the bankruptcy court plainly would apply state court law in making the determination? My threshold question is, is this a determination that should have been made by the bankruptcy court in the first instance and not by us? The answer, Justice Mitchell, is the bankruptcy court would have made that decision if any party had brought it to its decision. It was not. But the law still operates the way it does. And when you get to the second part of the analysis as to whether the contract should be treated as one, that is solely a state law question. Obviously, the federal bankruptcy cases could be – could provide guidance. But, you know, your honors know Illinois state law and are best suited to apply it. And the cases that we cite in our brief, including – I'd like to call to your attention specifically the international supply company case. That had multiple parties and multiple contracts. And there was no, you know, complete coverage or coextensiveness of the relationship. Some parties were parties to certain contracts but not others. And all of the contracts were related to the same enterprise or economic transaction. But they were not interdependent in the sense that counsel had argued because they did not all acknowledge or reference each other. Some did. Some didn't. But what the court did was looked at the four instruments together, saw that they were all designed to be operating together. And most importantly, that the parties intended them to do that. And as we plead in the complaint, Sugar Beets and Paper Source would not have entered into the lease without the co-tenant agreement. They would not have entered into the co-tenant agreement without the lease. They would only have done this if they could do it together because it was only by the operation together of these two contracts could the intended purpose be achieved. And so in that sense, with intent being the touchstone, under Illinois state law, those contracts should be construed together. Mr. Ryan, how would you address your opposing counsel's argument regarding the statute of frauds? We rely on the implied contract. Yes. So we rely on two cases. The Perry cases, Perry v. Nevin Hotel, and the Cohen-Brenner case. Perry in particular did address the statute of frauds. And our theory is that through the conduct, the parties adopted a prior written agreement. And that written agreement was signed by Sugar Beets, the party to be charged. So there's no statute of frauds obstacle here because the primary policy behind the statute of frauds is an evidentiary one, right? You want to make sure that if there's no, you know, formal written contract, that there is a basis for ascertaining what the parties agreed to. Since our theory is that they adopted the prior written agreement, there's no evidentiary issue. They signed that contract. The only question is whether their conduct was sufficient to adopt post-bankruptcy the prior contract. And if you find that they satisfy the requirements for an implied-to-fact contract, then there's no statute of frauds question because they did sign that prior writing. The writing of the statute of frauds, of course, does not have to be, you know, a valid contract itself. It's just evidence of what the terms of the parties' agreement were. And by adopting that agreement, they have bound themselves to all the terms in their written agreement. So are there other facts that support the implied-to-fact contract aside from, well, you can also address the payment as the obvious one. But just give me a punch list of what facts support this particular argument. At the pleading stage, and of course we did not have the opportunity for discovery, we would be relying primarily on the payment over a period of several months and then in the correspondence, references to the agreement. And we set forth the litany, if you will, of those facts at paragraph 104 of the prior complaint. So it's not a situation where there's some other facts. If you needed an opportunity to amend, you put all the facts that you have. We put all the facts that we had without further discovery. Justice Mitchell, yes. I'd be happy to answer any further questions. Okay. Any additional questions? Okay. Thank you very much, counsel.  Okay. We'll take your arguments under advisement and this concludes our argument.